UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD J. FLECHSENHAAR, III,

                            Plaintiff,

v.

NANCY A. BERRYHILL, [1]
Acting Commissioner of the
Social Security Administration,

                            Defendant.
_____

**REPORT AND
RECOMMENDATION**

15-CV-0005A

## INTRODUCTION

Before the court are the parties' cross-motions for judgment on the pleadings [9, 14] which were referred to me for preparation of a Report and Recommendation [10].[2] For the reasons stated below, I recommend that plaintiff's motion for judgment on the pleadings be denied, and the Acting Commissioner's motion for judgment on the pleadings be granted.

## BACKGROUND

Plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB") on December 6, 2010 (T. 156)[3]. That application was denied, and an administrative

---

[1]   Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2]   Bracketed references are to the CM/ECF docket entries.

[3]   References denoted as "T" are to the transcript of the administrative record.

hearing was subsequently held before Administrative Law Judge ("ALJ") Connor J. O'Brien on November 16, 2012 (T. 36). On May 31, 2013, ALJ O'Brien determined that plaintiff was not disabled (T. 21). The Appeals Council denied plaintiff's request for review on November 26, 2014, making the ALJ's determination the final decision of the Acting Commissioner (T. 1-3). Plaintiff thereafter commenced this action.

Plaintiff was 40 years old on April 14, 2008, the date of his alleged onset of disability (T. 176-79). He asserts that he is disabled due to chronic pain syndrome in his knees, degenerative disc problems in his back, migraine headaches, and morbid obesity (T. 40, 179, 226). He has a high school diploma (T. 41) and in the past worked as an industrial truck operator, a shipping and receiving clerk, a support technician and customer service representative (T. 42-68, 180).

Plaintiff is five feet ten inches tall and weighed up to 386 pounds (T. 281).[4] In 2000, he fell on his knees, resulting in degenerative changes and subchondral sclerosis of the right knee (T. 235). Dr. Michael Maloney performed surgery on plaintiff's right knee on April 6, 2000 (T. 240). In a report dated March 19, 2001, Dr. Maloney stated that although plaintiff "has been consistent and compliant with physical therapy . . . [h]e has had some improvement but still has significant weakness, difficulty with prolonged standing, weight-bearing, pivoting maneuvers" (T. 241). His range of motion in extension "lacks 5-8 degrees of hyperextension", and his flexion was lacking 10 degrees". Id. Dr. Maloney determined that plaintiff had reached maximal medical improvement at that time. Id. He opined that plaintiff's condition would "preclude him from returning to his previous occupation" and "the osteochondral injury could

---

[4]  The medical record in this case is not voluminous. Plaintiff asserts that he had difficulties obtaining treatment due to limitations in medical coverage. Plaintiff's Memorandum of Law [9-1], p. 3.

lead to further degenerative articular changes and may require further intervention surgically down the road". Id.

On April 19, 2001, Dr. Maloney made the following assessment regarding plaintiff's work restrictions: "He still has significant weakness, difficulty with prolonged standing, weight bearing and pivoting maneuvers. Based on his range of motion loss and extension and flexion in the osteochondral injury of the lateral compartment, the following are his current and permanent restrictions: no standing or walking on concrete floors, no squatting, no kneeling, no climbing, no stairs, no lifting over 25 pounds, no pushing or pulling more than 10 pounds" (T. 332).

On April 15, 2011, plaintiff was consultatively examined by Dr. Harbinder Toor in connection with his DIB application (T. 280). Dr. Toor noted plaintiff's chronic knee pain since 2000, as well as his complaints of difficulty standing, walking, bending, lifting, and "sitting a long time because of both pain and obesity". Id. Dr. Toor also noted plaintiff's history of acid reflux, migraine headaches, and "non-specific heart disease at birth". Id.  Upon examination, Dr. Toor found that plaintiff limped toward the right side due to knee pain, but did not use assistive devices (T. 281). His lumbar spine forward flexion was only "50 degrees, extension 0 degrees" and his lateral flexion was "30 degrees and rotation 30 degrees" (T. 282). Dr. Toor diagnosed plaintiff as suffering from history of injury and pain in right knee, balancing problems, migraine headaches, obesity, acid reflux, and heart disease (T. 283).

Dr. Toor concluded that plaintiff "has moderate to severe limitation standing, walking, squatting, or heavy lifting because of pain, obesity, and balancing problems. He has difficulty doing daily physical routines. He has moderate limitation sitting a long time". Id. Dr. Toor also found that plaintiff's migraine headaches could "interfere with his routine". Id.

Dr. Syed Raza, an internist, was plaintiff's treating physician from January 2008 through at least May 2011 (T. 243-76, 383-401). On September 28, 2009, Dr. Raza assessed plaintiff's functional limitations as follows: he was very limited in his ability to use stairs or climb; moderately limited in his ability to walk, stand, lift, carry, push, pull, or bend; and had no limitations in his ability to sit, see, hear, speak, or use his hands (T. 396). He did not believe plaintiff's restrictions on "work activities" would last longer than 90 days (T. 397).

On June 7, 2010, Dr. Raza stated that plaintiff was very limited in his ability to lift, carry, push, pull, bend, use stairs, or perform other climbing; moderately limited in his ability to walk and stand; and had no limitations in his ability to sit, see, hear, speak, or use his hands (T. 394). On this occasion, Dr. Raza stated that these restrictions could be expected to last longer than 90 days (T. 395).

On November 1, 2010, Dr. Raza opined that plaintiff was very limited in his ability to use stairs or perform other climbing; moderately limited in his ability to walk, stand, lift, carry, push, pull, or bend; but had no limitations in his ability to sit, see, hear, speak, or use his hands (T. 393). He stated that these restrictions could be expected to last for four to six months. Id. On April 27, 2011, Dr. Raza stated that plaintiff was very limited in his ability to walk, lift, carry, push, pull, bend, use stairs or perform other climbing; moderately limited in his ability to stand; and had no limitations in his ability to sit, see, hear, speak, or use his hands (T. 391). On this occasion, Dr. Raza stated that these limitations could be expected to last seven to eleven months. Id.

ALJ O'Brien determined that although plaintiff could not perform any of his past relevant work (T. 19), he retained the residual functional capacity to perform sedentary work with the following limitations: "the claimant is occasionally able to push and/or pull. He needs a

sit/stand option that allows an opportunity to change position for up to fifteen minutes after sixty

minutes. He needs to avoid standing or walking on concrete. He cannot climb a rope, ladder,

scaffold or stairs. He can never kneel or crawl. He can occasionally stoop, crouch, and balance.

He is limited to unskilled work, due to the impact of headaches and combined impact of

impairments and pain" (T. 16).

Plaintiff argues that ALJ O'Brien erred by failing to assign proper weight to the

various physicians' opinions (Plaintiff's Memorandum of Law [9-1], p. 5), did not properly

analyze the impact of plaintiff's pain (Plaintiff's Memorandum of Law [9-1], p. 7), and did not

consider the impact of plaintiff's obesity. Plaintiff's Memorandum of Law [9-1], p. 8.


## ANALYSIS

### A.  Standard of Review

"A district court may set aside the Commissioner's determination that a claimant

is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42

U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as

adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305

U.S. 197, 229 (1938).

For purposes of entitlement to disability insurance benefits, a person is considered

disabled when he or she is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months".  42 U.S.C. §§423(d)(1)(A) & 1382c(a)(3)(A). Such a disability will be found to exist

- 5 -

only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§423(d)(2)(A) & 1382c(a)(3)(B).

In order to determine whether plaintiff is suffering from a disability, the following five-step inquiry must be employed:

"1.    The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.    If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her  mental or physical ability to do basic work activities.

3.    If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work  experience.

4.    If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.    If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform."

Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.  *See* Talavera v. Astrue, 697 F.3d 145 (2d Cir. 2012); 20 C.F.R. §§404.1520, 416.920.  Moreover, the ALJ has an affirmative duty to fully develop the record where deficiencies exist.  *See* Gold v. Secretary, 463

F.2d 38, 43 (2d Cir. 1972); Swiantek v. Acting Commissioner of Social Security, 588 Fed. Appx.

82, 84 (2d Cir. 2015) (Summary Order).

**B.    Physician Opinions**

ALJ O'Brien determined that plaintiff could perform sedentary work (T. 16).

Pursuant to 20 C.F.R. §416.967, sedentary work "involves lifting no more than 10 pounds at a

time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.

Although a sedentary job is defined as one which involves sitting, a certain amount of walking

and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and

standing are required occasionally and other sedentary criteria are met."

Plaintiff argues that ALJ O'Brien failed to "assign proper weight to the opinions

of the physicians" regarding his ability to sit[5] sufficiently to perform sedentary work. Plaintiff's

Memorandum of Law [9-1], pp. 5-6. He argues that it was error to give great weight to Dr.

Maloney's opinion because it was issued in 2001, seven years before plaintiff's alleged disability

onset. Id. at p. 5.    Nevertheless, plaintiff admits that "all the evidence" agrees with Dr.

Maloney's opinion as to plaintiff's continued weakness, and difficulty with standing, weight

bearing and pivoting, and that Dr. Maloney did not assess plaintiff's ability to sit. Id., p. 6.

Plaintiff states that even if Dr. Maloney "had felt that [plaintiff] could sit without problems, this

was not mentioned, and it was 12½ years later that the hearing was held". Id.  He asserts that

because he has "added about 150 pounds", the osteoarthritis in his knee has worsened since Dr.

---

[5]    Plaintiff's motion papers do not challenge his ability to perform any other aspects of sedentary work. He asserts, generally, that Dr. Toor's opinion that he had "moderate to severe limitations standing, walking, squatting or heavy lifting" and "sitting a long time" is not compatible with sedentary work "because a person must be able to sit at least six hours out of an eight-hour day" to perform sedentary work. Plaintiff's Memorandum of Law [9-1], at p. 6.

Maloney's opinion was issued. Id. Plaintiff also points to the consulting opinion of Dr. Toor, who stated that plaintiff would have a moderate limitation "sitting a long time" (T. 283).

With respect to the various medical opinions, ALJ O'Brien stated that she gave "some weight" to Dr. Raza's opinions based upon his treating relationship even though she found his opinions to be "quite conclusory" (T. 19). She also gave "some weight" to the opinion of Dr. Toor, which she found to "generally consistent" with the evidence of record. Id. She gave "great weight" to the opinion of Dr. Maloney based upon the treating relationship. Id.

It is undisputed that Dr. Maloney did not assess plaintiff's ability to sit. However, plaintiff does not address the fact that on four occasions between September 28, 2009 and April 27, 2011, his treating physician, Dr. Raza, opined that plaintiff would have *no limitation* in his ability to sit (T. 391, 393, 394, and 396). Although ALJ O'Brien found that Dr. Raza provided "little explanation" for his opinions, she stated that in light of the "nature and degree" of the treating relationship between plaintiff and Dr. Raza, she credited Dr. Raza's opinions to the extent they were supported (T. 19). Plaintiff has not pointed to any clinical evidence in the record which would render Dr. Raza's opinion as to his ability to sit unreliable. Although there is some inconsistency between the opinions of Dr. Toor and Dr. Raza with respect to plaintiff's ability to sit, plaintiff has not articulated any basis which would have made it error for ALJ O'Brien to credit Dr. Raza's opinion in this regard.[6]

Plaintiff has not established that ALJ O'Brien erred in assigning weight to the respective medical opinions in the record.

---

[6]    Indeed, it is well-established that "the ALJ cannot rely solely on [the] RFCs [of the consulting examiners] as evidence contradicting the treating physician RFC". Cabibi v. Colvin, 50 F. Supp. 3d 213, 234 (E.D.N.Y. 2014). "The Second Circuit has repeatedly stated that when there are conflicting opinions between the treating and consulting sources, the 'consulting physician's opinions or report should be given limited weight'". Harris v. Astrue, 2009 WL 2386039, *14 (E.D.N.Y. 2009) (*quoting* Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir.1990)). "This is because 'consultative exams are often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day'". Id. (*quoting* Cruz, 912 F.2d at 13).

**C.  Consideration of Pain and Obesity**

Plaintiff also argues that ALJ O'Brien failed to properly assess how pain impacted his ability to function, or the limitations related to his obesity. Plaintiff's Memorandum of Law [9-1], pp. 7-8.

ALJ O'Brien listed chronic pain syndrome with respect to plaintiff's knees and headaches as being among plaintiff's serve impairments (T. 15). She noted plaintiff's complaints of constant sharp pain in his knee, as well as diagnostic imaging showing mild varus deformity in both lower extremities, cartilage loss, mild degenerative joint disease, and migraine headaches (T. 17).  While she found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, ALJ O'Brien concluded that the record reflected that the limitations arising from these symptoms were not disabling. Id.

In support of this conclusion, ALJ O'Brien cited, among other things, the opinion of Dr. Maloney that plaintiff had only a twenty-five percent permanent loss of use of his right knee (T. 17), and that Dr. Toor found that plaintiff was not in acute distress and needed no help getting on and off the exam table (T. 18). She also noted plaintiff's testimony that he is able to shower, dress, cook, clean, do the laundry and shop. Id.  ALJ O'Brien further noted that the record reflected that plaintiff received almost no treatment relating to migraines. Id.

Contrary to plaintiff's argument that "nowhere in the decision is there mentioned about the role of pain in limiting" plaintiff's ability to work (Plaintiff's Memorandum of Law [9-1], p. 8), the record reflects that ALJ O'Brien considered the limiting effects of plaintiff's "subjective experience", but concluded that those limitations were not disabling (T. 19). The

medical reports, findings, opinions, and testimony identified by ALJ O'Brien constitute

substantial evidence to support that conclusion.

With respect to his obesity, plaintiff asserts that ALJ O'Brien failed to consider

the factors required by SSR 02-1p. Plaintiff's Memorandum of Law [9-1], p. 8. Social Security

Ruling ("SSR") 02–1p provides "that [the Commissioner] considers obesity to be a medically

determinable impairment and remind adjudicators to consider its effects when evaluating

disability. The provisions also remind adjudicators that the combined effects of obesity with

other impairments can be greater than the effects of each of the impairments considered

separately".

Here, ALJ O'Brien listed obesity among plaintiff's severe impairments (T. 15).

She noted plaintiff's obesity and complaints of pain (T. 17), and further noted findings by Dr.

Toor and Dr. Raza relating to plaintiff's obesity (T. 18). ALJ O'Brien, *citing to SSR 02-1p*, then

stated:

> "The claimant testified that he is six feet tall and weighs 360 pounds. The
> claimant has experienced shortness of breath that his doctor attributes to obesity.
> Obesity can cause limitation of function. The functions likely to be limited
> depend on many factors, including where the excess weight is carried. An
> individual may have limitations in any of the exertional functions such as sitting,
> standing, walking, lifting, carrying, pushing, and pulling. It may also affect the
> ability to do postural functions such as climbing, balancing, stooping, and
> crouching. The ability to manipulate may affected by the presence of fatty tissue
> in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards
> may also be affected.   . . .  In arriving at my decision, I have considered the
> claimant's obesity".

(T. 18).

The record reflects that ALJ O'Brien also adequately considered plaintiff's

obesity in assessing his residual functional capacity as required by SSR-02-1p.

**CONCLUSION**

For these reasons, I recommend that plaintiff's motion for judgment on the pleadings [9] be denied and that the Acting Commissioner's motion for judgment on the pleadings [14] be granted.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by June 30, 2017. Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: June 16, 2017

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

- 11 -